# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § | |
| | § | Civil Action No. 4:20-cv-02958 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MOHAMED OMAR, | § | |
| HOSSAM ABD ELGHANY, and | § | |
| MOUSTAFA MAATOUK, individually | § | |
| and together d/b/a Universe IPTV; | § | |
| Universe TV; World-Universeiptv.com; | § | |
| Uni-Update.com; and Uni-Web.online, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF DISH NETWORK L.L.C.'S MOTION FOR DEFAULT JUDGMENT
AGAINST MOHAMED OMAR AND HOSSAM ABD ELGHANY**

## Table of Contents

I.  Statement of the Nature and Stage of the Proceedings ........................................................1

II.  Statement of the Issues to be Ruled Upon ..........................................................................2

III.  Summary of the Argument ..................................................................................................4

IV.  Argument ............................................................................................................................5

    A.  The Court has Jurisdiction to Grant Default Judgment. .........................................5

    B.  Default Judgment on Count I, Direct Copyright Infringement. .............................6

        1.  DISH Owns Valid Copyrights. ...................................................................7

        2.  Defendants Infringed DISH's Copyrights. ...............................................10

    C.  Default Judgment on Count II, Inducing and Materially Contributing to Copyright Infringement. ........................................................................................................11

    D.  Statutory Damages Should be Awarded for Copyright Infringement. ..................12

        1.  Defendants are Engaged in Massive Copyright Infringement. ................13

        2.  Statutory Damages at $150,000 Per Registered Work. ...........................14

    E.  DISH Should be Awarded Permanent Injunctive Relief. .....................................18

        1.  DISH's Irreparable Harm and Money Damages are Inadequate. ............18

        2.  The Balance of Equities and Public Interest Favor an Injunction. ..........20

        3.  The Court Should Order Third Party Service Providers to Cease Providing Services Supporting Defendants' infringement. ......................................21

        4.  The Court Should Order Registries and Registrars to Disable and Transfer to DISH the Domains Supporting Defendants' Infringement. .................23

V.  Conclusion ........................................................................................................................24

## Table of Citations

### Cases

*Alcatel USA, Inc. v. DGI Technologies, Inc.*,
    166 F.3d 772 (5th Cir. 1999) ................................................................................. 3, 10-11

*Am. Broad. Cos. v. Aereo, Inc.*,
    134 S.Ct. 2498 (2014) ..................................................................................................... 11

*Apple Computer, Inc. v. Franklin Computer Corp.*,
    714 F.2d 1240 (3d Cir. 1983) ................................................................................... 20-21

*Arista Records, LLC v. Tkach*,
    122 F. Supp. 3d 32 (S.D.N.Y. 2015) .............................................................................. 22

*Aspen Tech., Inc. v. M3 Tech, Inc.*,
    569 Fed. App'x 259 (5th Cir. 2014) .............................................................................. 20

*Broadcast Music, Inc. v. Xanthas, Inc.*,
    855 F.2d 233 (5th Cir. 1998) ......................................................................................... 14

*Chi-Boy Music v. Charlie Club, Inc.*,
    930 F.2d 1224 (7th Cir. 1991) .................................................................................. 14-15

*China Central Television v. Create New Tech. (HK) Ltd.*,
    2015 WL 3649187 (C.D. Cal. June 11, 2015) ........................................................ 19-21

*China Central Television v. Create New Tech. (HK) Ltd.*,
    No. 15-01869 MMM, Dkt. 192 (C.D. Cal. May 31, 2016), Dkt. 30-2, Ex. p. 245-257
    ........................................................................................................................................ 22-24

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001) ........................................................................................ 17

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007) ............................................................................................... 8

*DISH Network L.L.C. v. Dima Furniture Inc.*,
    2019 WL 2498224 (D. Md. June 17, 2019) ............................................... 8, 11, 18, 21-23

*DISH Network L.L.C. v. Dima Furniture Inc.*,
    2019 WL 5588901 (D. Md. July 12, 2019) ...................................................................... 8

*DISH Network L.L.C. v. Easybox IPTV*,
     No. 4:19-cv-2994, Dkt. 28 (S.D. Tex. Feb. 5, 2020), Dkt. 30-2, Ex. p. 327-329 ...... 17, 22

*DISH Network L.L.C. v. Khalid*,
     2021 WL 765709 (S.D. Tex. Feb. 23, 2021) .................................................................. 17

*DISH Network L.L.C. v. Lool Tech Co., Ltd.*,
     No. 4:16-cv-01771, Dkt. 25 (S.D. Tex. Mar. 17, 2017), Dkt. 30-2, Ex. p. 295-299
     .......................................................................................................................... 12, 22-24

*DISH Network L.L.C. v. Mo' Ayad Al Zayed Trading Est.*,
     No. 4:17-cv-03909, Dkt. 24 (S.D. Tex. Aug. 24, 2018), Dkt. 30-2, Ex. p. 258-263
     ...............................................................................................8, 11, 17-18, 22-24

*DISH Network L.L.C. v. Shava IPTV Network LLC*,
     No. 1:15-cv-00706 (TSE/IDD), Dkt. 120 (E.D. Va. Sept. 15, 2016), Dkt. 30-2, Ex. p.
     264-279 ................................................................................................ 9-11, 19, 21

*DISH Network L.L.C. v. Shava IPTV Network LLC*,
     No. 1:15-cv-00706 (TSE/IDD), Dkt. 124 (E.D. Va. Jan. 24, 2017), Dkt. 30-2, Ex. p. 280-
     282 .................................................................................................................. 11

*DISH Network L.L.C. v. Shava IPTV Network LLC*,
     No. 1:15-cv-00706 (TSE/IDD), Dkt. 136 (E.D. Va. Feb. 2, 2018), Dkt. 30-2, Ex. p. 283-
     291.............................................................................................................. 22-23

*DISH Network L.L.C. v. Shava IPTV Network LLC*,
     No. 1:15-cv-00706 (TSE/IDD), Dkt. 138 (E.D. Va. Feb. 22, 2018), Dkt. 30-2, Ex. p. 292-
     294.............................................................................................................. 22-23

*eBay Inc. v. MercExchange, L.L.C.*,
     547 U.S. 388 (2006) .......................................................................................... 4, 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
     499 U.S. 340 (1991) ......................................................................................... 2, 6, 10

*Fl. Businessmen v. City of Hollywood*,
     648 F.2d 956 (5th Cir. 1981) ..................................................................................... 18

*Gen. Universal Systems, Inc. v. Lee*,
     379 F.3d 131 (5th Cir. 2004) ...................................................................................... 9

*Glovaroma, Inc. v. Maljack Productions, Inc.*,
     71 F.Supp.2d 846 (N.D. Ill. 1999) ............................................................................. 10

*James v. Frame*,
    6 F.3d 307 (5th Cir. 1993) ....................................................... 3

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) .................................................. 20

*Malaco Inc. v. Cooper*,
    2002 WL 1461927 (N.D. Tex. July 3, 2002) ............................ 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................. 20-21

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*,
    515 F.2d 1200 (5th Cir. 1975) ............................................ 2, 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ........................................ 3, 11-12

*Showtime Networks Inc. v. Doe*,
    No. 2:15-cv-03147-GW-MRW, Dkt. 20 (C.D. Cal. Apr. 30, 2015), Dkt. 30-2, Ex. p. 307-313 ....................................................................... 22

*Smith v. Casey*,
    741 F.3d 1236 (11th Cir. 2014) .............................................. 10

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
    74 F.3d 488 (4th Cir. 1996) ................................................... 15

*Tapestry, Inc. v. Trendy Tex., LLC*,
    2018 WL 1558274 (S.D. Tex. Jan. 19, 2018) ......................... 3, 14

*Times Content Limited v. Doe*,
    No. 4:17-cv-01287, Dkt. 10 (S.D. Tex. May 5, 2017), Dkt. 30-2, Ex. p. 300-306 .... 22-23

*US Green Bldg. Council, Inc. v. Wardell*,
    2016 WL 3752964 (N.D. Tex. June 17, 2016) ..................... 15-16

*US Green Bldg. Council, Inc. v. Wardell*,
    No. 3:14-cv-01541-M-BH, Dkt. 60 (July 11, 2016) ..................... 15

*Valley v. Rapides Parish Sch. Bd.*,
    118 F.3d 1047 (5th Cir. 1997) ................................................ 18

*Warner Bros. Entm't, Inc. v. Doe*,
    No. 14-cv-3492, Dkt. 27 (S.D.N.Y. Oct. 3, 2014), Dkt. 30-2, Ex. p. 314-326.......... 22-23

*Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*,
    824 F. Supp. 2d 1003 (C.D. Cal. 2011) ................................................. 19-20

**<u>Statutes</u>**

17 U.S.C. § 101 .............................................................................................. 9

17 U.S.C. § 104 .............................................................................................. 9

17 U.S.C. § 106 .................................................................................... 3, 7, 10

17 U.S.C. § 201 .............................................................................................. 8

17 U.S.C. § 204 .............................................................................................. 8

17 U.S.C. § 410 ........................................................................................... 8-9

17 U.S.C. § 411 .............................................................................................. 9

17 U.S.C. § 412 ............................................................................................ 13

17 U.S.C. § 501 ....................................................................................... 8, 10

17 U.S.C. § 502 ....................................................................................... 4, 18

17 U.S.C. § 504 ................................................................................... 3, 12-14

**<u>Rules</u>**

Fed. R. Civ. P. 55(b)(2) ............................................................................. 1, 5

**<u>Secondary Sources</u>**

U.S.C.O., Circular 38(a) ............................................................................... 9

In accordance with Federal Rule of Civil Procedure 55(b)(2), DISH Network L.L.C. ("DISH") moves the Court to grant default judgment against Defendants Mohamed Omar ("Omar") and Hossam Abd Elghany ("Elghany") (collectively "Defendants").

## I.      Statement of the Nature and Stage of the Proceedings

DISH filed its Complaint on August 24, 2020, alleging copyright infringement against unidentified DOE Defendants operating the Universe IPTV service (the "Service").  (Dkt. 1.) DISH also filed a motion for leave to conduct expedited discovery to identify the DOE Defendants, which the Court granted on September 8, 2020.  (Dkts. 3, 5.)  DISH then issued subpoenas to thirteen United States based service providers associated with the Service.  The subpoena responses identified Defendants as operators of the Service and sellers of Universe Service subscriptions ("Universe Subscriptions").

DISH filed its First Amended Complaint ("FAC") on December 4, 2020, alleging direct and contributory copyright infringement against Defendants. (Dkt. 10, FAC ¶¶ 4-5, 37-55.)  DISH filed a motion for default judgment against Defendant Moustafa Maatouk on August 12, 2021.[1] (Dkt. 30.)  Defendants' Service perpetrates and facilitates copyright infringement on a massive scale through the unauthorized copying, distribution and public performance of international television channels and programs in the United States.  (*Id.* ¶¶ 1-2, 8, 17-22, 25-32.)  Defendants take broadcasts or streams of the protected channels, transfer them to computer servers, provided, controlled, and maintained by Defendants, and then transmit the protected channels to customers in the United States ("Service Users") who purchase Defendants' Universe Subscriptions.  (*Id.* ¶¶ 1, 8, 15, 17-22, 25-34.)  Defendants' wrongful acts infringe DISH's exclusive rights to distribute

---

[1] DISH's FAC also alleges direct and contributory copyright infringement against Defendant Moustafa Maatouk.  (FAC ¶¶ 6, 37-55.)

and publicly perform the programming that airs on these protected channels. (*Id.* ¶¶ 11-13.) Defendants are liable for direct copyright infringement and for inducing and materially contributing to copyright infringement. (*Id.* ¶¶ 37-55.)

Defendants engaged in these illegal activities for at least two years, despite having received at least 12 notices of infringement informing them of the infringing nature of their conduct and demanding that they remove the protected channels from the Service and despite being sued in this case. (*Id.* ¶¶ 2, 35-36.)

Defendants were served on July 26, 2021, but they have not filed a responsive pleading or otherwise appeared in this case. (Dkts. 20, 27, 32.) The Clerk entered default against Defendants on August 18, 2021. (Dkt. 33.) The Court ordered DISH to file its motion for default judgment against Defendants by October 8, 2021. (Dkt. 34.) Default judgment is now appropriate. DISH requests statutory damages for 47 registered, copyrighted works, which represents a small fraction of Defendants' overall infringement, and a permanent injunction to prevent further infringement of DISH's copyrights and further irreparable harm to DISH.

## II.      Statement of the Issues to be Ruled Upon

1.      Do the well-plead factual allegations in DISH's FAC establish Defendants' liability for direct copyright infringement?

Default judgment is properly entered if the well-pleaded factual allegations in the complaint, taken as true, establish Defendants' liability. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A claim for direct copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).

"Copying" includes infringing on any of the five exclusive rights set forth in 17 U.S.C. § 106, including the right to publicly perform an audiovisual work.

2.     Do the well-plead factual allegations in DISH's FAC establish Defendants' liability for contributory copyright infringement?

A claim for contributory copyright infringement has two essential elements: "(1) ownership of the copyrighted material" and (2) that the defendant "with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 790 (5th Cir. 1999); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("[O]ne infringes contributorily by intentionally inducing or encouraging direct infringement.").

3.     Was Defendants' copyright infringement willful, warranting maximum statutory damages for 47 registered works?

The Copyright Act allows for recovery of the copyright owner's actual damages plus any additional profits of the infringer, or statutory damages. *See* 17 U.S.C. § 504(a). Statutory damages up to $150,000 per work may be awarded for willful infringement. 17 U.S.C. § 504(c). Courts may consider the following factors in determining whether to award maximum statutory damages: "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Tapestry, Inc. v. Trendy Tex., LLC*, No. H-16-3150, 2018 WL 1558274, at *1 (S.D. Tex. Jan. 19, 2018). Damages may be awarded without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

4.      Should a permanent injunction be issued to prevent further infringement of DISH's copyrights and further irreparable harm to DISH?

The Copyright Act authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A permanent injunction is appropriate where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### III.      Summary of the Argument

DISH brought this direct and contributory copyright infringement action to stop Defendants from transmitting and providing access to 37 television channels exclusively licensed to DISH in the United States. Defendants provided more than a thousand persons in the United States with free access to these channels and the programs that air on these channels through Defendants' Service. Defendants infringed DISH's exclusive rights to distribute and publicly perform the programming that airs on these channels by transmitting them from computer servers controlled by Defendants to Service Users who accessed the programs using the Service, and inducing and materially contributing to copyright infringement. As such, Defendants are liable for direct and contributory copyright infringement.

Defendants willfully engaged in these illegal activities for more than 2 years, despite having received at least 12 notices of infringement informing them of the infringing nature of their conduct and demanding that they remove the channels from the Service.

4

Despite proper service, Defendants failed to respond to DISH's FAC or otherwise defend. Default judgment is now appropriate.   DISH requests statutory damages for 47 registered, copyrighted works, which represents a small fraction of Defendants' overall infringement, and a permanent injunction to prevent further infringement of DISH's copyrights and further irreparable harm to DISH, including an order for third party service providers to cease providing services supporting Defendants' infringement and an order for registries and registrars to disable and transfer to DISH the domains supporting Defendants' infringement.

## IV.    Argument

### A.    The Court has Jurisdiction to Grant Default Judgment.

Defendants defaulted by failing to respond to or defend this action despite being properly served. (*See* Dkts. 20, 27, 33.)  Defendants were served with summons, DISH's FAC, Order for Conference, the order continuing the initial conference, and Judge Sim Lake's courtroom procedures.  (Dkt. 27.)  DISH also served Defendants with a copy of its Application for Clerk's Entry of Default and this Motion pursuant to Local Rule 5.5.   (*See* Dkt. 32-4; Certificate of Service.)  Defendants are United Arab Emirates or Egypt residents and not minors, incompetent, or exempt under the Servicemembers' Civil Relief Act.  Fed. R. Civ. P. 55(b)(2); (*See* Dkt. 32-1 ¶¶ 4-7, Exs. 1-2 (must be at least 18 years old to open a PayPal account and use the PayPal services); FAC ¶¶ 1-2, 4-5, 8, 15, 17-22, 25-55 (Resident of United Arab Emirates, Resident of Egypt, and copyright infringement).)

The Court has subject matter jurisdiction, and personal jurisdiction and venue are both proper.  (FAC ¶¶ 4-5, 7-9; Dkt. 27.)  Defendants transmit channels exclusively licensed to DISH to at least 1,000 Service Users located in the United States, have a reseller located in the United States, and offer to sell Universe Subscriptions to prospective resellers located in the United States.

5

(FAC ¶¶ 8, 18, 28-32, 34; Dkt. 30-2, Ex. B, Duval Decl. ¶¶ 5, 7, 10, Ex. 1, at 332-343.)[2]
Defendants transmitted, provided, and sold Arabic language content to the Arab-American
community, and Texas is home to the fourth largest Arab-American and expat community in the
United States.  (FAC ¶¶ 12-13, 15, 28-32; Dkt. 30-2, Ex. A, Ferguson Decl. ¶ 4, Ex. 3, at 5, 135.)
Omar owns and operates the Uni-Update.com; Uni-Web.online; Universe-ip.com;
Universepro9.vip; Universeiptv.com; Universe-ip.world; Olink1.rocks; Olink2.rocks;
Olink3.rocks; Olink4.rocks; Olink5.rocks; Olink7.rocks; and Ui-tv.se domains and websites used
to transmit television channels to users of the Universe Service and distribute, sell, and promote
Universe Subscriptions.  (FAC ¶¶ 4, 17-20, 31; Dkt. 35-2, Ex. A, Ferguson Decl. ¶ 2, Ex. 2, at 3-
4, 42-44.)  Omar obtained an account with United States based payment processor PayPal to
acquire the Universe IPTV domains, make payments related to the Universe IPTV Facebook
account, receive payments for the sale of Universe Subscriptions, and make payments to the
service providers used to transmit DISH's copyrighted content on the Universe Service.  (Dkt. 35-
2, Ex. A ¶ 2, Exs. 2-3, at 3-4, 41-48; FAC ¶¶ 15, 17-20, 28-29, 31-32.)  Elghany obtained an
account with PayPal to sell Universe Subscriptions and make payments related to the Universe
IPTV Facebook account.  (Dkt. 35-2, Ex. A ¶ 3, Exs. 5-6, at 4-5, 56-60; FAC ¶¶ 15, 21, 25, 33.)
Defendants also used United States based social media providers Facebook and Twitter to
distribute, sell, and promote Universe Subscriptions to Service Users.  (Dkt. 35-2, Ex. A ¶¶ 2-3,
Exs. 2, 6. at 3-4, 42-44, 60; FAC ¶¶ 5, 21-22, 25-27, 30, 33.)  The Court has jurisdiction to grant
default judgment.

**B.      Default Judgment on Count I, Direct Copyright Infringement.**

A claim for copyright infringement has two elements: "(1) ownership of a valid copyright,

---

[2] Pinpoint citations to the declarations and their exhibits include the "Exhibit Page" numbers.

and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc.*, 499 U.S. at 361. "Copying" includes infringing on any of the five exclusive rights set forth in 17 U.S.C. § 106, including the right to publicly perform an audiovisual work.

### 1. DISH Owns Valid Copyrights.

DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide. (FAC ¶ 10.) DISH contracts for and licenses rights for the international channels it distributes from channel owners and their agents including ARY Digital USA LLC; Asia TV USA Ltd.; B4U U.S.; Geo USA Holdings, Inc. d/b/a Geo USA LLC; Hum Network Limited; Impress Telefilm, Inc.; MBC FZ LLC; International Media Distribution (Luxembourg) S.A.R.L.; MSM Asia Limited; National Communications Services (SMC-PVT.) Limited; Soundview ATN LLC; Soundview Broadcasting LLC; Television Media Network (Pvt) Ltd; TV Today Network Ltd.; and World Span Media Consulting, Inc. (collectively, the "Networks"). (*Id.* ¶ 11.) Networks provide channels that include Aaj Tak; Al Hayah 1; ART Cima; ARY Digital; ARY News; ATN Bangla; ATN News; B4U Movies; CBC; CBC Drama; Channel-i; Dunya TV; Express Entertainment; Express News; Future TV, Geo News; Geo TV; Hekayat; Hum Masala; Hum Sitaray; Hum TV; Hum World; India Today; LBC; LBCI (a/k/a LDC); MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; Melody Aflam; Melody Classic; NTV Bangla; SAB; SET (a/k/a Sony SET); SET MAX; Zee Aflam; and Zee Alwan (collectively, the "Protected Channels"). (*Id.* ¶ 12.) Many of the works that aired on the Protected Channels and for which DISH holds exclusive distribution and public performance rights are registered with the United States Copyright Office ("U.S.C.O").[3] (*Id.* ¶ 13, Ex. 1; Dkt. 30-2, Ex.

---

[3] Defendants transmitted and provided access to DISH's registered and unregistered copyrighted works on the Service. (FAC ¶ 13, 28, 40, Exs. 1-2; Dkt. 30-2, Ex. B ¶¶ 7, 10, Exs. 1-2, at 332-379.)

A ¶¶ 7-8, Exs. 7-8, at 6-8, 165-244.)

DISH holds the exclusive right to distribute and publicly perform in the United States the works that air on the Protected Channels pursuant to written licensing agreements with Networks. (FAC ¶ 13.)   The written agreements are sufficient to transfer the specified exclusive rights to DISH.   *See* 17 U.S.C. §§ 201(d), 204(a) (authorizing transfer of rights protected under the Copyright Act by signed, written agreement).   As the exclusive licensee of the distribution and public performance rights, DISH may sue for Defendants' infringement of those rights. 17 U.S.C. § 501(b); *Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007) ("Under current copyright law, exclusive licenses are recognized as a type of an ownership interest …. Exclusive licensees may sue without joining the copyright owners").

The foregoing well-pleaded allegations from DISH's FAC satisfy the requirement of copyright ownership.   (*See* FAC ¶¶ 11-13; Dkt. 30-2, Ex. A ¶¶ 7-8, Exs. 7-8, at 6-8, 165-244); 17 U.S.C. § 410(c) (stating that a certificate of registration is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," including ownership); *DISH Network L.L.C. v. Dima Furniture Inc.*, No. TDC-17-3817, 2019 WL 2498224, at *3 (D. Md. June 17, 2019) ("Accepting the allegations in DISH's First Amended Complaint as true, DISH has established that it held the exclusive right to distribute and publicly perform the works on the Protected Channels…."), *report and recommendation adopted*, 2019 WL 5588901 (D. Md. July 12, 2019); *DISH Network L.L.C. v. Mo' Ayad Al Zayed Trading Est.*, No. 4:17-cv-03909, Dkt. 24 at 1-2 (S.D. Tex. Aug. 24, 2018) (granting default judgment and finding that DISH owns copyrights in works that air on many of the same channels at issue in this case); (Dkt. 30-2, Ex. A ¶ 10, Ex. 10, at 8, 259-260).

A published work is protected provided: "(1) on the date of first publication, one or more

of the authors … is a national, domiciliary, or sovereign authority of a treaty party … ; or (2) the work is first published … in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b).

DISH claims protection for works that aired on the Protected Channels and were authored or first published in the United Arab Emirates, Qatar, Egypt, Lebanon, Pakistan, India, and Bangladesh. (FAC ¶ 39.) These nations are party to a copyright treaty adhered to by the United States, the Berne Convention for the Protection of Literary and Artistic Works, and therefore each is a "treaty party" under section 104(b). 17 U.S.C. § 101; U.S.C.O., Circular 38(a), *available at www.copyright.gov/circs/circ38a.pdf.* The works at issue therefore satisfy the requirements of section 104(b) for protection under the Copyright Act.

DISH's copyrighted works need not be registered with the U.S.C.O. to be protected. Registration is only necessary for a "United States work." 17 U.S.C. § 411(a). A work first published in a treaty party is not a "United States work." *See* 17 U.S.C. § 101 (defining the term as a work first published in the United States, simultaneously in the United Sates and another place, or in a foreign nation not a treaty party). DISH alleges that its copyrighted programs are not United States works because they were authored or first published in the United Arab Emirates, Qatar, Egypt, and Lebanon which are treaty parties under the Copyright Act. (FAC ¶ 39.) Neither DISH nor Networks are required to register their works. 17 U.S.C. § 411(a).

Forty-seven of DISH's copyrighted works are registered with the U.S.C.O., which creates a presumption as to ownership and validity. (FAC ¶ 13, Ex. 1); *see* 17 U.S.C. § 410(c); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) ("A certificate of registration, if timely obtained, is prima facie evidence of both that a copyright is valid and that the registrant owns the copyright."); *DISH Network L.L.C. v. Shava IPTV Network LLC*, No. 1:15-cv-00706

(TSE/IDD), Dkt. 120 at 9 (E.D. Va. Sept. 15, 2016) (applying § 410(c) presumption to registered Hindi language programs). "[O]wnership of a valid copyright" is established by default. *Feist*, 499 U.S. at 361. DISH is the exclusive licensee pursuant to written agreements with Networks, and therefore DISH holds the copyrights in the registered works.  (FAC ¶ 13); *see Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F. Supp. 2d 846, 854 (N.D. Ill. 1999) (plaintiffs/assignee created a rebuttable presumption that a third party copyright claimant was the owner of the copyright via the registration certificate and  the defendant failed to introduce any factual evidence to counter the registration certificate); *Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (§ 501(b) provides standing to both the legal and beneficial owner of a copyright interest and authorizing one to rely on a copyright registration issued to the other).

### 2.    Defendants Infringed DISH's Copyrights.

Copyright infringement requires "copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361.  Copying means to violate an exclusive right granted to copyright owners in 17 U.S.C. § 106, including to distribute or perform publicly.  *Alcatel USA, Inc.*, 166 F.3d at 787-88, n.57-58.

Defendants own and operate the Service.  (FAC ¶¶ 1, 8, 17-22, 25-32, 34.)  Defendants transmits the Protected Channels through the Service. (*Id.* ¶¶ 28-29.)  In particular, Defendants takes broadcasts or streams of the Protected Channels and transfers them to one or more computer servers provided, controlled, and maintained by Defendants.  The Protected Channels are then transmitted to Defendants' customers in the United States via the Service.  (*Id.* ¶¶ 28-32.)  As a result, Defendants directly infringe DISH's exclusive rights to distribute and publicly perform the works airing on the Protected Channels through the Service.  (*Id.* ¶¶ 38-42.)

These well-pleaded allegations in DISH's complaint establish that Defendants infringed DISH's copyrights in works airing on the Protected Channels, thus satisfying the second element of DISH's copyright infringement claim.  *See Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 441-51 (2014) (holding that provider of centralized equipment used to stream broadcast programming to its subscribers infringed content owners' right of public performance); *Dima Furniture*, 2019 WL 2498224, at *4 (same); *Mo' Ayad*, Dkt. 24 at 1-2 (same); *Shava*, Dkt. 120 at 9 (same); (Dkt. 30-2, Ex. A ¶¶ 10-11, Exs. 10-11, at 8, 259-260, 273).

Default judgment should be granted against Defendants on Count I for direct copyright infringement.  *See Dima Furniture*, 2019 WL 2498224, at *4 (granting default judgment and finding copyright infringement based on allegations that defendants transmitted copyrighted programs via similar services); *Shava*, Dkts. 120 at 9, 124 (same); (Dkt. 30-2, Ex. A ¶ 11, Exs. 11-12, at 8, 273, 281-282).

## C.    Default Judgment on Count II, Inducing and Materially Contributing to Copyright Infringement.

A claim for contributory copyright infringement has two essential elements: "(1) ownership of the copyrighted material" and (2) that the defendant "with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another."  *Alcatel USA, Inc.*, 166 F.3d at 790; *see also Perfect 10*, 508 F.3d at 1169 ("[O]ne infringes contributorily by intentionally inducing or encouraging direct infringement.").  Direct copyright infringement, including ownership of the copyrighted material, was established above in Part IV.B.

Defendants induced and materially contributed to infringement of DISH's exclusive distribution and public performance rights by providing Service Users with access to the Protected Channels and the programs that make up the Protected Channels, despite having the ability to

11

prevent such access.  (FAC ¶¶ 47, 53.)  Defendants sell the Service in the United States.  (*Id.* ¶¶ 1, 4-5, 8, 15, 17-19, 27, 32-33, 48.)  Defendants advertise the Service as a means of accessing the Protected Channels.  (*Id.* ¶¶ 16, 20-22, 26-27, 49.)  Service Users are provided access to the Protected Channels.  (*Id.* ¶¶ 32, 50.)  Defendants' actions create or expand the audience for the infringement of DISH's exclusive distribution and public performance rights in the United States. (*Id.* ¶ 47.)  Defendants had knowledge of the infringing activity as shown by their receipt of numerous notices of infringement demanding that they cease transmitting the Protected Channels. (*Id.* ¶¶ 35-36, 52.)

These well-pleaded allegations in DISH's complaint establish that Defendants are contributorily liable for copyright infringement because they served as the intermediary between third parties who directly infringe DISH's exclusive distribution and public performance rights and Service Users, who become a necessary component of the infringement – the audience.  *See Perfect 10*, 508 F.3d at 1172 (holding that provider of an Internet search engine could be held contributorily liable for copyright infringement because it "substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials."); *DISH Network L.L.C. v. Lool Tech Co., Ltd.*, No. 4:16-cv-01771, Dkt. 25 at 2 (S.D. Tex. Mar. 17, 2017) (granting default judgment and finding defendants contributorily liable for copyright infringement where they created the network, had knowledge, promoted, and encouraged the infringement rather than taking simple measures to prevent it); (Dkt. 30-2, Ex. A ¶ 12, Ex. 15, at 9, 297).  Default judgment should be granted against Defendants on Count II for contributory copyright infringement.

**D.    Statutory Damages Should be Awarded for Copyright Infringement.**

12

The Copyright Act allows for recovery of the copyright owner's actual damages plus any additional profits of the infringer, or statutory damages. *See* 17 U.S.C. § 504(a). DISH elects statutory damages and moves the Court to award damages for its 47 registered, copyrighted works, as requested in the FAC.

### 1. Defendants are Engaged in Massive Copyright Infringement.

Defendants are infringing DISH's copyrights on a massive scale by transmitting and providing access to the Protected Channels without authorization on the Service. Monitoring by an enforcement expert establishes that Defendants continually transmitted the Protected Channels since at least August 2019. (Dkt. 30-2, Ex. B ¶¶ 6-7, 10, Ex. 1, at 332-343.) Monitoring detected 666 instances of Defendants transmitting the Protected Channels. (*Id*.) The number of individual works aired on the Protected Channels is more substantial.

Most of the copyrighted works aired on the Protected Channels are unregistered non-United States works, for which DISH's monetary remedy is limited to actual damages and the disgorgement of a defendant's profits. *See* 17 U.S.C. §§ 412, 504. The actual damages that DISH sustained are difficult to quantify for the reasons stated in Part IV.E.1 discussing permanent injunctive relief, and Defendants' refusal to participate in this case has prevented DISH from obtaining evidence of his profits. Consequently, the damages request is limited to registered works, which allow for recovery of statutory damages.

DISH owns copyrights in at least 47 works registered with the United States Copyright Office (the "Registered Works"). (FAC ¶ 13, Ex. 1; Dkt. 30-2, Ex. A ¶¶ 7-8, Exs. 7-8, at 6-8, 165-244.) Each of the Registered Works were registered within three months of their first publication. (*See* Dkt. 30-2, Ex. A ¶¶ 7-8, Exs. 7-8, at 6-8, 165-244.) As a result, each of the 47 registrations were timely for purposes of awarding statutory damages. *See* 17 U.S.C. § 412(2) ("[N]o award of

13

statutory damages . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.").

The Registered Works are individual episodes of television series that aired on the Protected Channels.  (FAC ¶ 13, Ex.1; Dkt. 30-2, Ex. A ¶¶ 7-8, Exs. 7-8, at 6-8, 165-244.) Defendants are deemed to have infringed the copyrights in the Registered Works by virtue of their default.  *See Nishimatsu*, 515 F.2d at 1206; (FAC ¶¶ 40, 46-47).  In addition, the monitoring results evidence that Defendants transmitted or provided access to the Registered Works on the Service. (*See* Dkt. 30-2, Ex. B ¶¶ 7, 10, Ex. 1 (showing distribution of the Protected Channels on the dates of publication, or on the dates of monitoring before and after the dates of publication), at 332-343.) DISH requests statutory damages for each of the 47 Registered Works.

### 2.    Statutory Damages at $150,000 Per Registered Work.

Statutory damages up to $150,000 per work may be awarded for willful infringement.  17 U.S.C. § 504(c).  Courts may consider the following factors in determining whether to award maximum statutory damages: "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff."  *Tapestry, Inc.*, 2018 WL 1558274, at *1.  Statutory damages of $150,000 for each of the 47 Registered Works, for a total of $7,050,000, are appropriate.

Defendants willfully infringed DISH's copyrights.  (FAC ¶¶ 35-36, 43, 54.)   An infringement is willful if the defendant "knows his actions constitute an infringement."  *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1998).  "Willfulness may be inferred if notice of a valid copyright was given prior to infringement."   *Malaco Inc. v. Cooper*, No.

14

300CV2648P, 2002 WL 1461927, at *4 (N.D. Tex. July 3, 2002) (citing *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991)).  Defendants had actual knowledge of their infringement.  Between August 2019 and September 2020, Defendants were provided with 12 notices demanding that they cease transmitting the Protected Channels.  (FAC ¶ 35; Dkt. 30-2, Ex. A ¶ 2, Ex. 1, at 4, 12-61.)  Additional notices were sent to content delivery networks ("CDNs") of the Service between August 2019 and November 2020.  (FAC ¶ 36; Dkt. 30-2, Ex. A ¶ 3, Ex. 2, at 4, 63-133.)  Defendants transmitted the Protected Channels from different locations when the service providers removed the Protected Channels from the Service.  (FAC ¶ 36.)

Defendants were again notified of the infringement when the FAC was served.  (Dkt. 27.) Defendants transmitted the Protected Channels and continued to sell the Service providing access to the Protected Channels after receiving the notices of infringement and after being served.  (Dkt. 30-2, Ex. B ¶ 7, Ex. 1, at 332-336, 339-343; Dkt. 35-2, Ex. A ¶¶ 2-3, Exs. 2-3, 5, at 3-5, 42-48, 57-58; FAC ¶¶ 15, 28-32, 35.)  Recent monitoring shows that Defendants continue to transmit the Protected Channels.  (Dkt. 30-2, Ex. B ¶ 7, Ex. 1, at 332-336, 339-343.)

Defendants indisputably had actual knowledge that their conduct constituted copyright infringement, failed to answer, and defaulted.  Defendants are therefore willful copyright infringers subject to maximum statutory damages.  *See US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *5 (N.D. Tex. June 17, 2016) ("Because Defendant's conduct was willful and he admitted that he acted knowingly and intentionally by virtue of his default, an award of statutory damages against Defendant in the maximum amount is warranted"), *report and recommendation adopted*, No. 3:14-cv-01541-M-BH, Dkt. 60 (July 11, 2016); *Superior Form Builders Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996)

15

(upholding award of maximum statutory damages where plaintiff failed to establish any actual damages).

Additional factors such as "the defendant's profits[,]" "a plaintiff's lost revenues[,]" "the potential for discouraging a defendant from engaging in similar behavior going forward[,]" and "whether a defendant has cooperated in providing records from which to assess the value of the infringing material" also support an award of statutory damages of up to $150,000 per work. *US Green Bldg.*, 2016 WL 3752964, at *5. Defendants' Service distributes the Protected Channels on a 24 hour per day, 7 day per week basis, and has done so since at least August 2019. (Dkt. 30-2, Ex. B ¶¶ 7, 10, Ex. 1, at 332-343.) Defendants likely would not have continued offering the Service if it were not highly profitable. Considering Defendants do not pay licensing fees for the Protected Channels and instead engage in, induce, and materially contribute to copyright infringement, it may be inferred that the Service generates substantial profits. The exact amount of profits that Defendants received and number of persons using the Service is not available because Defendants chose to default rather than defend this action, thereby frustrating attempts at obtain discovery from them.

Defendants' infringement caused DISH to suffer lost subscription revenues, lost market share, and price erosion, which are inherently difficult to calculate. *See* Part IV.E.1. It would cost a consumer approximately $175 per month to subscribe to DISH and receive all the Protected Channels that are licensed and available on DISH's satellite service. (Dkt. 30-2, Ex. C, Riemersma Decl. ¶ 7, Ex. 1, at 408-409, 413-419.) During the two years of Defendants' infringement, DISH has lost many thousands of subscribers to its Arabic, Hindi, Urdu, and Bangla programming packages, at least in part to Defendants' unauthorized transmission of the Protected Channels. (*See id.* ¶ 8, Ex. 2, at 410, 421.) Defendants had more than 1,000 subscribers in the United States in

16

July 2020.  (Dkt. 30-2, Ex. B ¶ 5, at 332; FAC ¶ 34.)  And limited third party discovery establishes Omar's sale of approximately 1,188 Universe Subscriptions totaling approximately 3,564 months of service, and Elghany's purchase of approximately 709 Universe Subscriptions totaling approximately 2,127 months of service.  (*See* Dkt. 35-2, Ex. A ¶ 2, Ex. 2, at 3-4, 42-44 (Omar received $15,598.82 from Elghany and $10,554 from Universe IPTV resellers); FAC ¶ 34 (3 month subscriptions were approximately $22).)  Each sale of a Universe Subscription is potentially depriving DISH of substantial revenues.  Defendants' unauthorized transmission of the Registered Works contributes to DISH's loss because the Registered Works air on the Protected Channels.  (FAC ¶¶ 13, 31-32, Ex. 1; Dkt. 30-2, Ex. A ¶¶ 7-8, Exs. 7-8, at 6-8, 165-244.)  DISH's large loss of subscribers during the two year period of Defendants' infringement and the monthly subscription cost to receive all the Protected Channels from DISH supports a maximum statutory damage award of $7,050,000.[4]  *See DISH Network L.L.C. v. Khalid*, No. CV H-19-4563, 2021 WL 765709, at *6-7 (S.D. Tex. Feb. 23, 2021) (awarding maximum statutory damages of $150,000 per work for 112 works for a total of $16,800,000 where defendant provided access to the protected channels on his websites and then failed to answer after being sued).

Defendants' clear willfulness and the strong need for deterrence, as shown by ongoing infringement in the face of numerous notices of infringement and intent to operate their business on the basis of stealing others' intellectual property, justifies an award of $150,000 per work. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) (statutory damages of $31.68 million were not excessive in case of willful copyright infringement, as shown by the defendant continuing to broadcast programming after the case was

---

[4]  Maximum statutory damages are supported by 1,679 Service Users during the two years of Defendants' infringement.  (24 months multiplied by $175 per month multiplied by 1,679 Service users equals $7,051,800.)

filed); *DISH Network L.L.C. v. Easybox IPTV*, No. 4:19-cv-2994, Dkt. 28 at 2 (S.D. Tex. Feb. 5, 2020) (awarding $150,000 for each of 66 registered works totaling $9,900,000); *Mo' Ayad*, Dkt. 24 at 2 (awarding maximum statutory damages for each of eight registered works); *Dima Furniture Inc.*, 2019 WL 2498224, at *3 (same); (Dkt. 30-2, Ex. A ¶¶ 10, 16, Exs. 10, 19, at 8-9, 260, 329). DISH should be awarded statutory damages of $7,050,000, which is $150,000 for each of the 47 Registered Works.

**E.     DISH Should be Awarded Permanent Injunctive Relief.**

The Copyright Act authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  A permanent injunction is appropriate where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc.*, 547 U.S. at 391.  Each requirement for a permanent injunction is satisfied here.

**1.     DISH's Irreparable Harm and Money Damages are Inadequate.**

Reputational injury and lost profits, which are difficult to calculate, each constitute irreparable harm.  *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding irreparable harm based upon potential damage to reputation); *Fl. Businessmen v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. 1981) ("A substantial loss of business may amount to irreparable injury if the amount of lost profits is difficult or impossible to calculate.").

DISH contracted with Networks granting DISH the exclusive right to transmit the Protected Channels to subscribers in the United States.  (FAC ¶ 13; Dkt. 30-2, Ex. C ¶ 3, at 406-

407.)  DISH offers the Protected Channels to its subscribers for a fee.  (FAC ¶ 10; Dkt. 30-2, Ex. C ¶ 7, at 408-409.)   DISH loses revenues and market share when Service Users receive the Protected Channels through Defendants' unauthorized Service, compared to purchasing the channels from DISH.  (FAC ¶¶ 28, 32, 44, 55; Dkt. 30-2, Ex. C ¶¶ 6-8, 10, at 408-410.)  Quantifying DISH's lost revenues is impractical as the number of customers that would have selected or otherwise stayed with DISH cannot be easily determined.  (Dkt. 30-2, Ex. C ¶¶ 8, 10, at 409-410.)  Defendants' copyright infringement, if allowed to continue, will lead to accumulating losses that are increasingly difficult to calculate.

DISH is irreparably harmed by subscriber loss and reduction in market share resulting from Defendants' Service.  *See Dima Furniture*, 2019 WL 249822, at *7 (finding that DISH was irreparably harmed by defendant's infringing streaming service); *Shava*, Dkt. 120 at 13 (finding irreparable harm and monetary damages are inadequate because defendants are liable for copyright infringement and plaintiffs have alleged the difficulty of determining the extent of the harm from the infringements); *China Central*, 2015 WL 3649187, at *13 ("Defendants' conduct has caused irreparable harm because it has materially reduced the number of individuals who subscribe to authorized U.S. platforms for [plaintiffs'] programming, causing lost market share."); *Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1013 (C.D. Cal. 2011) (enjoining unlawful streaming service and finding "the loss of revenue to Plaintiffs and their licensees, which is already significant, will continue to increase, and constitutes irreparable injury"); (Dkt. 30-2, Ex. A ¶ 11, Ex. 11, at 8, 277).

Second, the unauthorized transmission of the Protected Channels to Service Users irreparably harms DISH by damaging its business reputation and goodwill.  The channel streams transmitted on Defendants' Service are not subject to DISH's quality assurance and security

protocols and are plagued by interruption or downtime and poor picture quality, which harms DISH in the eyes of consumers that mistakenly believe the Protected Channels transmitted on the Service originate from or are approved by DISH or Networks, or incorrectly assume this is the same level of quality received from a legitimate service such as that provided by DISH.  (Dkt. 30-2, Ex. C ¶¶ 11-12, at 410-411); *see China Central*, 2015 WL 3649187, at *13 ("[D]efendant's infringing conduct has caused irreparable harm because it impairs plaintiffs' brand, reputation, and goodwill by associating their programming with poor quality transmissions and viewing experiences on [defendants'] device."); *WTV Sys., Inc.*, 824 F. Supp. 2d at 1012-14 (finding irreparable harm for reasons that include sub-optimal viewing experience and risk of customer confusion associated with defendant's unauthorized video streaming service).

Finally, Defendants may not be financially able to compensate DISH for the damages caused to date or losses incurred in the future, and therefore Defendants' infringement causes irreparable harm to DISH for which monetary damages alone are not an adequate remedy.  *See Aspen Tech., Inc. v. M3 Tech, Inc.*, 569 Fed. App'x 259, 273 n.56 (5th Cir. 2014) (upholding permanent injunction and concluding irreparable harm is established where it is probable that plaintiff will be unable to collect any judgment against defendant); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) (finding irreparable harm under similar circumstances).

### 2.     The Balance of Equities and Public Interest Favor an Injunction.

DISH will be irreparably harmed without an injunction.  An injunction would only require that Defendants forego illegal conduct, which is not entitled to any weight in an equitable balancing of factors.  *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 n.12 (5th Cir. 1991) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely

to be infringing, such an argument in defense merits little equitable consideration."); *Apple Computer*, *Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (holding injunction may issue despite potentially "devastating effect" on defendant's business because an infringer is not "permitted to construct its business around its infringement").

Permanently enjoining Defendants will advance the public interest by protecting the copyrighted works airing on the Protected Channels, maintaining the incentive for Networks to produce these works and for DISH to license them. *See Shava*, Dkt. 120 at 13 ("[I]t is in the public interest to uphold the exclusive rights of the copyright owner."); *China Central*, 2015 WL 3649187, at *14 (Any "interest the public may have 'in receiving copyrighted content for free is outweighed by the need to incentivize the creation of original works'") (quoting *Grokster*, 518 F. Supp. 2d at 1222); (Dkt. 30-2, Ex. A ¶ 11, Ex. 11, at 8, 277).

### 3. The Court Should Order Third Party Service Providers to Cease Providing Services Supporting Defendants' infringement.

Defendants use third-party service providers including Squitter Networks and HostPalace Web Solution Private Limited to transmit the Protected Channels.[5]  (Dkt. 30-2, Ex. B ¶¶ 8-9, Exs. 3-4, at 336-337, 381-404.)  Disabling the computer servers will assist in at least temporarily preventing Defendants from distributing the Protected Channels.  (Dkt. 30-2, Ex. B ¶¶ 8-9, 11, at 336-338.)

---

[5] The computer servers that are transmitting or being used in the course of transmitting the Protected Channels as of August 2021 are identified by IP addresses 77.247.109.127; 77.247.109.129;   77.247.109.139;   77.247.109.143;   77.247.109.146;   77.247.109.159; 77.247.109.222; 185.53.89.11; 185.53.89.33; and 185.63.254.137.  (Dkt. 30-2, Ex. B ¶¶ 8-9, at 336-337.)  The service providers responsible for these IP addresses – Squitter Networks and HostPalace Web Solution Private Limited – have been provided with copies of DISH's motion and the proposed injunction and thereby given an opportunity to object.  (*See* Certificate of Service.)

Courts have enjoined third parties who received actual notice of a permanent injunction from providing services in connection with copyright infringement. *See Dima Furniture*, 2019 WL 2498224 at *8 (enjoining nonparty internet service providers because of their "active concert or participation" with defendant's infringing conduct); *China Central*, Dkt. 192 at ¶¶ 16-17 (ordering third party service providers to cease providing web, server, file hosting, data center and colocation, primary and backup storage, back-end, traffic routing, bandwidth, content delivery networks, domain name server systems, search-based online advertising, domain name registration privacy protection, social media, user generated and online content, and data security services); *Lool Tech*, Dkt. 25 at ¶ 3 (ordering third party service providers to cease providing electronic storage, computer server, website hosting, file hosting, domain hosting, domain name registration, content delivery or acceleration, or social media services); *Mo' Ayad*, Dkt. 24 at ¶ 3 (same); *Easybox*, Dkt. 28 ¶ 7 (same); *Times Content Limited v. Doe*, No. 4:17-cv-01287, Dkt. 10 at ¶ 2 (S.D. Tex. May 5, 2017) (ordering third party service providers to suspend all services to infringing websites); *Showtime Networks Inc. v. Doe*, No. 2:15-cv-03147-GW-MRW, Dkt. 20 at ¶ 2 (C.D. Cal. Apr. 30, 2015) (same); *Warner Bros. Entm't, Inc. v. Doe*, No. 14-cv-3492, Dkt. 27 at 6-7 (S.D.N.Y. Oct. 3, 2014) (same); *Shava*, Dkts. 136 at 6, 138 at 2 (enjoining third party service providers and the affiliated computer servers from providing services to the defendants that support their infringing activity); (Dkt. 30-2, Ex. A ¶¶ 9-16, Exs. 9-10, 13-19, at 8-9, 255-256, 261-262, 289, 294, 299, 304-305, 311-312, 320-321, 329); *see also Arista Records, LLC v. Tkach*, No. 15-cv-3701(AJN), 122 F. Supp. 3d 32, 36-38 (S.D.N.Y. 2015) (holding non-party service providers must comply with injunction, finding "courts that have addressed comparable technological services have similarly held that they fall within an injunction's reach if those services are knowingly used to facilitate injunction violations") (citing cases).

22

4.      **The Court Should Order Registries and Registrars to Disable and Transfer to DISH the Domains Supporting Defendants' Infringement.**

Defendants used the domain names *World-Universeiptv.com* and *Uni-Update.com* to advertise, promote, and distribute Universe Subscriptions.  (FAC ¶¶ 16-20, 33, 48-49; Dkt. 30-2, Ex. A ¶ 5, Ex. 4, at 5, 137.)   Defendants used *The-phoenix.me*, *Ui-tv.se*, *Universe-ip.com*, *Olink1.rocks*, *Olink2.rocks*, *Olink3.rocks*, *Olink4.rocks*, *Olink5.rocks*, *Olink7.rocks*, *Universepro9.vip*, *Universeiptv.com*, and *Universe-ip.world* domains and their assigned computer servers (together with *World-Universeiptv.com* and *Uni-Update.com*, the "Offending Domain Names"), to operate the Service and transmit the Protected Channels.  (Dkt. 30-2, Ex. B ¶ 9, at 336; Dkt. 30-2, Ex. A ¶¶ 2-3, Exs. 1-2 (infringement notices with Offending Domain Names in URLs distributing the Protected Channels), at 4, 12-133; Dkt. 35-2, Ex. A ¶ 2, Ex. 2, at 3-4, 42-44 (Omar's payments for Offending Domain Names); FAC 31).  The registries for the Offending Domain Names are VeriSign, Inc., Donuts Inc., Minds + Machines Group Limited, doMEn d.o.o., and The Internet Foundation of Sweden.  (Dkt. 30-2, Ex. A ¶¶ 17-21, at 9-10.)  Transferring the Offending Domain Names to DISH would stop Defendants, at least temporarily, from being able to distribute the Protected Channels in violation of DISH's rights.[6]  (*See* Dkt. 30-2, Ex. B ¶ 11, at 337.)

Similar orders in copyright and trademark cases instructed registries and registrars to disable and transfer infringing domains to the plaintiffs.  *See Dima Furniture*, 2019 WL 2498224 at *8-9; *Mo' Ayad*, Dkt. 24 ¶ 4; *China Central*, Dkt. 192 at ¶ 18; *Lool Tech*, Dkt. 25 at  ¶ 4; *Times*

---

[6] VeriSign, Inc., Donuts Inc., Minds + Machines Group Limited, doMEn d.o.o., and The Internet Foundation of Sweden have been provided with copies of DISH's motion and proposed injunction and thereby given an opportunity to object.  (*See* Certificate of Service.)

*Content Limited*, Dkt. 10 at ¶ 3; *Warner Bros.*, Dkt. 27 at 7; *Shava*, Dkts. 136 at 6, 138 at 2; (Dkt. 30-2, Ex. A ¶¶ 9-13, 15, Exs. 9-10, 13-16, 18, at 8-9, 256, 262, 289, 294, 299, 305, 321).

## V.     Conclusion

The Court should grant DISH's motion and hold Defendants jointly and severally liable for damages in the amount of $7,050,000 and enter a permanent injunction, including an order for third party service providers to cease providing services supporting Defendants' infringement and an order for registries and registrars to disable and transfer to DISH the domains supporting Defendants' infringement.[7]   A proposed permanent injunction has been filed similar to the injunctions entered in analogous cases.  *See, e.g.*, *Mo' Ayad*, Dkt. 24 at 2-4; *China Central*, Dkt. 192; *Lool Tech*, Dkt. 25 at 3-4; (Dkt. 30-2, Ex. A ¶¶ 9-10, 12, Exs. 9-10, 15, at 8-9, 246-257, 260-262, 298-299).

Dated:  August 20, 2021

Respectfully submitted,

**HAGAN NOLL & BOYLE LLC**

By: /s/ Stephen M. Ferguson
Stephen M. Ferguson (attorney-in-charge)
Texas Bar No. 24035248
Southern District of Texas Bar No. 614706
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Joseph H. Boyle (of counsel)
Texas Bar No. 24031757
Southern District of Texas Bar No. 30740

Counsel for Plaintiff DISH Network L.L.C.

[7] DISH is not seeking an award of prejudgment interest or attorney's fees.

24